MENACHEM BENJAMINI, ASNAT
BINYAMINI, K.B., A MINOR CHILD,
M.B., A MINOR CHILD, Y.B., A MINOR
CHILD, R.B., A MINOR CHILD, EINAT
VAX, U.H.V., A MINOR CHILD, DANIEL
VAX, TAYLA VAX, NOA KUPERSTEIN,
CHEN ARAZI, ROY MARCO, H.M., A
MINOR CHILD, G.M., A MINOR CHILD,
TAMIR AVRAHAM, PATRICIA
AVRAHAM, ORLI ABITBOUL
ISRALOWITZ, N.A., A MINOR CHILD,
N.Y.A., A MINOR CHILD, R.A., A MINOR
CHILD, ELIZABETH MCNEILL, JOYCE
SOLL, STEPHEN SOLL, TAMAR NISHRY
DANON, ROUY YOSEF DANON, C.D., A
MINOR CHILD, N.D., A MINOR CHILD,
O.D., A MINOR CHILD, KAREN MELON,
YANIV MELON, E.M., A MINOR CHILD,
T.M., A MINOR CHILD, A.M., A MINOR
CHILD, ITAMAR SIMON, OSNAT SIMON
KOVSHI, H.S., A MINOR CHILD, M.S., A
MINOR CHILD, I.S., A MINOR CHILD,
R.S., A MINOR CHILD, TALI RIESEL-
DANINO, YEHUDA DANINO, T.D., A
MINOR CHILD, N.D., A MINOR CHILD,
I.D., A MINOR CHILD, YOSI EDERI,
CARMEL EDERI, L.E., A MINOR CHILD,
M.E., A MINOR CHILD, E.E., A MINOR
CHILD, CHAIM LICHY, MICHALA
HERSHKOVICH, R.A.L., A MINOR
CHILD, R.M.L. A MINOR CHILD, C.L., A
MINOR CHILD, S.L., A MINOR CHILD,
E.L., A MINOR CHILD, JONATHAN
KOUNITZ, RINA KOUNITZ, Y.K., A
MINOR CHILD, OMER BERGER, NOAM
BERGER, I.B., A MINOR CHILD, E.B., A
MINOR CHILD,

(Addresses filed under Seal)

                    Plaintiffs,

v.

**PLAINTIFFS'
COMPLAINT**

**Case No.: _____**

| THE ISLAMIC REPUBLIC OF IRAN<br>Ministry of Foreign Affairs<br>Imam Khomeini Street<br>Imam Khomeini Square<br>Tehran, Iran<br>1136914811<br><br>　　　　　　　　　Defendant. | | |

## I.      Introduction

1.      This lawsuit against the Islamic Republic of Iran, brought under the terrorism exception of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A, arises out the terrorist attack in Israel on October 7, 2023, which was launched and led by Hamas and resulted in the extrajudicial killing of approximately 1,200 people, the abduction of 250 hostages, and the personal injury of several thousand other victims.

2.      Iran is liable under 28 U.S.C. § 1605A for providing material support and resources to the terrorists who committed this attack, which was the largest massacre of Jews since the Holocaust and resulted in the highest number of U.S. casualties in a single attack overseas in this century.

3.      Plaintiffs are U.S. nationals who were injured or killed in the October 7 attack and family members of those victims.

## II.      Jurisdiction and Venue

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1330, which provides that federal "district courts" "have original jurisdiction" over "any claim for relief *in personam* with respect to which the foreign state is not entitled to immunity." 28 U.S.C. § 1330(a).

5.      Under the FSIA, a foreign state is immune from the jurisdiction of American courts unless the case falls within an express statutory exception. 28 U.S.C. § 1604. The statutory exception applicable to this case is the state-sponsored terrorism exception under 28 U.S.C. § 1605A, which "confers subject matter jurisdiction on federal courts to hear certain terrorism-related claims" and "recognizes a federal cause of action against those foreign states subject to the exception." *Fritz v. Islamic Republic of Iran*, 320 F. Supp. 3d 48, 75 (D.D.C. 2018).

6.      The state-sponsored terrorism exception applies when "the foreign state was designated a state sponsor of terrorism" at the time of the terror attack giving rise to the civil claim

and at the time the lawsuit was filed. 28 U.S.C. § 1605A(a)(2)(A)(i)(I).

7.      Iran has been a designated state sponsor of terrorism since 1984 and has remained so designated to this day. *See* "Determination Pursuant to Section 6(i) of the Export Administration Act of 1979—Iran," 49 Fed. Reg. 2,836 (Jan. 23, 1984); U.S. Dep't of State, State Sponsors of Terrorism, available at https://www.state.gov/j/ct/list/c14151.htm (last visited June 12, 2025). *See also Coombs v. Islamic Republic of Iran*, No. CV 19-3363 (RDM), 2022 WL 715189, at *15 (D.D.C. Mar. 10, 2022) (finding that Iran has been a designated state sponsor of terrorism since 1984 and remains so to this day); *Anderson v. The Islamic Republic of Iran*, 753 F. Supp. 2d 68, 76 (D.D.C. 2010) ("Iran is a foreign state and has been designated a state sponsor of terrorism pursuant to section 69(j) of the Export Administration Act of 1979, 50 U.S.C. § 2405(j), continuously since January 19, 1984.").

8.      Venue is proper under 28 U.S.C. § 1391(f)(4), which provides that a "civil action against a foreign state" "may be brought" "in the United States District Court for the District of Columbia."

## III.    Factual Allegations

### a.  Hamas and Iran

9.      Hamas is an abbreviation for Harakat al-Muqawama al-Islamiya, which means Islamic Resistance Movement.

10.     Established in 1987, Hamas is an outgrowth of the extremist fundamentalist Islamist organization the Muslim Brotherhood, which itself was founded in Egypt in 1928.

11.     The Muslim Brotherhood in general and Hamas in particular seek the establishment of an Islamic caliphate through holy war (jihad).

12.     Hamas's founding charter calls for the obliteration of Israel: "Israel will exist and will continue to exist until Islam will obliterate it."

13.     The charter urges the killing of Jews: "The Day of Judgment will not come about until Moslems fight Jews and kill them. Then, the Jews will hide behind rocks and trees, and the rocks and trees will cry out: 'O Moslem, there is a Jew hiding behind me, come and kill him.'"

14.     Hamas has from its inception sought to eliminate Israel through violence and terrorism, including rocket attacks, bombings, suicide bombings, shootings, stabbings, and hostage taking, which Hamas has perpetrated since its founding.

15.     Hamas is the most prominent terrorist organization in the Gaza strip.

16.     On October 8, 1997, Hamas was designated a Foreign Terrorist Organization (FTO).

17.     FTOs are foreign organizations designated by the U.S. Secretary of State.

18.     Such a designation is made pursuant to Section 219 of the Immigration and Nationality Act, as amended.

19.     Under Section 219, the Secretary of State is authorized to designate an organization as an FTO if the entity is a foreign organization group, engages in terrorism, and threatens the security of U.S. nationals.

20.     Hamas has remained a designated FTO to this day.

21.     Hamas is part of Iran's "Axis of Resistance," a network of Iranian-backed militias, including Hamas, Palestinian Islamic Jihad, the Popular Front for the Liberation of Palestine, and Hezbollah.

22.     These terrorist organizations are part of Iran's "Ring of Fire," the goal of which is to encircle Israel with heavily armed terror proxies arrayed along Israel's borders.

23.     Iran has for decades provided these proxies with significant money, weapons, and training to enhance their terrorism capabilities and enable them to attack Israel and U.S. interests throughout the Middle East.

3

24. Iran provides support for these terror groups through the Islamic Revolutionary Guard Corps (IRGC) and the IRGC's subsidiary the Qods Force.

25. The IRGC is a paramilitary force that is accountable exclusively to Iran's Supreme Leader.

26. The IRGC defines itself as an instrument of the Supreme Leader, to whom it pledges unwavering loyalty.

27. The IRGC has played an essential role in exporting the Iranian Revolution, which began in 1979, beyond Iran's borders by using terror groups as proxies.

28. The IRGC is the primary driver of Iran's terror activities.

29. The U.S. State Department recognizes that "the IRGC actively participates in, finances, and promotes terrorism as a tool of statecraft." *Statement from the President on the Designation of the Islamic Revolutionary Guard Corps as a Foreign Terrorist Organization*, The White House (April 8, 2019), available at https://trumpwhitehouse.archives.gov/briefings-statements/statement-president-designation-islamic-revolutionary-guard-corps-foreign-terrorist-organization/ (last visited June 12, 2025).

30. In 2017, the U.S. Department of the Treasury, pursuant to its counterterrorism authority (Executive Order 13224), designated the IRGC as a Specially Designated Global Terrorist.

31. This designation was made because of the IRGC's activities in support of the IRGC-Qods Force, which was previously designated in 2007 under this same legal authority for providing support to numerous terrorist groups, including Hamas.

32. The Qods Force is responsible for the IRGC's international operations, including funding, weaponizing, and training terror groups to support the Iranian revolution through insurgency and terrorism.

33.    In 2019, the Secretary of State designated the IRGC, which included the IRGC-Qods Force, as a Foreign Terrorist Organization.

**b. Iran's Provision of Material Support to Hamas**

34.    Iran is the leading state sponsor of terrorism, facilitating a wide range of terrorist activities around the world by providing support to terrorist groups, including Hamas. *See* U.S. Department of State, Country Report on Terrorism 2023, available at https://www.state.gov/reports/country-reports-on-terrorism-2023/ (last visited June 12, 2025).

35.    Iran has publicly declared its official policy of attacking Israel and its support for Palestinian terrorist organizations, including Hamas.

36.    In 1992, at a conference in Tehran, Iran vowed to provide Hamas $30 million annually and military training.

37.    Subsequently, Hamas opened an office in Tehran.

38.    Between, 1990 and 2000, Iran provided financial support to Hamas in the range of $20 million to $50 million annually.

39.    In 2000, the Supreme Leader of Iran proclaimed, "We regard Palestine as an organ of our body, and the support of the Palestinian nation is pride for the Iranian people…The Palestinian people must continue the blessed Jihad and standing against the enemies of Islam…The Hamas, Islamic Jihad and Fatah forces must continue the struggle in a united way. Indeed, the only solution is the elimination of the root of this crisis, which is the Zionist regime imposed on the region."

40.    The Supreme Leader called on the Palestinian people to perpetrate terror attacks against Israel: "I salute the entire Palestinian nation – particularly those who engage in jihad and follow the path of Intifada. I would like to tell you that your movement will receive increasing support from Muslims and revolutionaries. And by Allah's favor, you will eventually overwhelm

the occupiers. The Islamic Republic of Iran will proudly continue to support this holy movement…"

41.     After Hamas won the 2006 elections and took control of the Gaza strip, Hamas and Iran strengthened their ties.

42.     In late 2006, the Hamas Prime Minister visited Tehran, where he met with Iran's Supreme Leader and President.

43.     Around that time, Iran gave Hamas $250 million.

44.     During the 2008 Gaza War, Iran increased its aid to Hamas, including by providing advanced rockets.

45.     A Hamas political leader Khaled Meshaal stated, "The victory of the people of Gaza was a miracle of God, and the Islamic Republic [of Iran] definitely has a share in this victory."

46.     In 2014, the Supreme Leader declared, "From the day of its illegitimate birth, the Zionist regime laid the foundations for overt violence…The only solution is to destroy this regime…The solution is total armed resistance against this regime. This is the solution."

47.     In 2015, the Supreme Leader urged Palestinians to resume terror attacks against Israel so that "in 25 years, Israel would no longer exist."

48.     In 2017, Iranian General Qassem Soleimani, the commander of the IRGC from 1998 until 2020, wrote a letter to Hamas's political leader, Ismail Haniyeh, in which he stated the following: "We look forward to strengthening cooperation with you, the allies of the Axis of Resistance. Together, we will restore light on the Palestinian issue. I sincerely hope that your jihad continues until the liberation of the Al-Aqsa Mosque and all Palestinian land, and until Jerusalem becomes a meeting place for all Muslims."

49.     In 2017, after Hamas's leaders met with senior Iranian officials, Yahya Sinwar, the mastermind behind the October 7 massacre, stated, "Relations with Iran are excellent and Iran is

the largest support of the Izz ad-Din al Qassam Brigades with money and arms." The Qassam Brigades is Hamas's terror wing.

50.    In 2018, Iran was reported to be transferring $70 million a year to Hamas.

51.    In 2019, several Hamas officials with the Supreme Leader, and Iran offered to increase funding to Hamas to $30 million per month.

52.    The IRGC's General, Soleimani, before his assassination in January 2020, pledged that "Islamic Iran will never leave Palestine."

53.    At Soleimani's funeral, Haniyeh, Hamas' political leader, delivered a eulogy, acknowledging that what Soleimani "provided to Palestine and the resistance has brought them to the position they are in today in terms of power and steadfastness."

54.    That same year, Iran's Supreme Leader reiterated its commitment to supporting Hamas: "Iran will spare no effort to support the Palestinian people to restore their right and hold off the evil schemes of the Zionist entity."

55.    An Iranian Brigadier General proudly acknowledged that Iran has provided weapons and technology to Palestinian militant groups and has taught Palestinian militants how to manufacture their own weaponry.

56.    In 2021, Haniyeh thanked Iran for supporting Hamas: "I give thanks to those who provided funds and weaponry to the courageous resistance, the Islamic Republic of Iran, [which] has not skimped in extending funds, weaponry, and technology to the resistance."

57.    Judges of this Court previously determined that Iran has, for years, provided material support to Hamas to enable the group to carry out terror attacks. *See Bennett v. Islamic Republic of Iran*, 507 F.Supp.2d 117, 127 (D.D.C. 2007) ("Iran has continuously provided material support to and sponsorship of Hamas and its members so that they may undertake terrorist attacks…").

7

58.     In *Stern v. Islamic Republic of Iran*, 271 F.Supp.2d 286 (D.D.C. 2003), the Court identified the strong ties between Iran and Hamas and detailed the material support Iran has provided Hamas to improve the group's operational capabilities to carry out terrorist attacks.

59.     Specifically, the Court in *Stern* made the following factual findings:

- Many years ago, Iran and Hamas "entered into a mutually beneficial operational alliance."

- "The joint goal of the Iran-Hamas alliance is Islamic revolution through jihad, or violence and unrelenting struggle against Israel and the West."

- Iran furthers its ideological goals "by training and funding Hamas to carry out" terror attacks.

- Iran has "expended great efforts to initiate a financial and operational alliance with Hamas," including by providing Hamas with "weapons, financing and military training."

- "Relations between Iran and Hamas were formalized in 1988, when Iran agreed to Hamas' request to send a delegation to Iran and to establish an official representation in that country."

- "Iran has systematically provided military training to hundreds of Hamas terrorist in training camps located in Iran and in Lebanon," and Hamas's transformation "into an effective, competent and deadly terrorist organization started in the early 1990's, when Hamas operatives began to receive Iranian military training."

- Iran's training of Hamas operatives has taken place at a large military camp in Tehran at which the operatives have been "trained in weapons use, manufacturing explosives and bombs, carrying out assassinations,

8

> collection and use of technologies, [and] clandestine operations and terrorist tactics."

- In the early 90s, Iran began giving Hamas large sums of money "in order to allow the organization to build an operational infrastructure to commit terrorist activity in Israel."

- In 1996 and 1997, for instance, "Iran gave Hamas financial support in amounts between $20-$50 million." *Id.* at 291-295.

- Iran is open about and proud of its support for Hamas: "Iran and Hamas brazenly publicize such support." *Id.* at 295.

- Even by 1997, "the professional military training provided to Hamas by Iran had significantly boosted Hamas' operational capabilities." *Id.*

- Iran's material support transformed Hamas "into an effective and deadly terrorist group." *Id.*

60.     "There is no question that Hamas and its agents received massive material and technical support from the Islamic Republic of Iran." *Weinstein v. Islamic Republic of Iran*, 184 F.Supp.2d 13, 22 (D.D.C. 2002).

61.     These findings were reiterated in 2017 in *Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 71 (D.D.C. 2017), where the Court found, "Iran's support for Hamas has been well-documented."

62.     Likewise, in 2018, the Court in *Estate of Hirshfel v. Islamic Republic of Iran*, 330 F.Supp.3d 107, 119 (D.D.C. 2018), found the evidence of Iranian funding for Hamas to be "overwhelming, including statements from Iranian officials themselves, statements from Hamas officials themselves as well as U.S. officials…talking about how the majority of the financing Hamas gets it gets from Iran."

9

63.     The Court in *Hirshfel* found that "Iran's support and sponsorship of Hamas was a well-known matter of Iranian policy, and further that Iran not only provided most of Hamas's funding over the course of many years, including at the time of the attack at issue, but Iran also assisted Hamas in obtaining weaponry and providing training and other resources." *Id.* at 121.

64.     These same conclusions were reached last year by the Court in *Przewozman v. Islamic Republic of Iran*, 754 F.Supp.3d 1, 12-15 (D.D.C. 2024). *See also Id.* at 15 ("Iran provided material support in the form of arms, training, funds, and technology to Hamas in the period leading up to the rocket attack in 2019.").

**c.  Iran's Material Support for the October 7 Attack**

65.     It is now well understood that Iran provided funding, training, weapons, and equipment to the terrorist groups that executed the October 7 massacre and that Iran's "long-standing material, financial, and training support to Hamas enabled Hamas to execute the attack." *See* U.S. Department of State, Country Report on Terrorism 2023, available at https://www.state.gov/reports/country-reports-on-terrorism-2023/ (last visited June 12, 2025).

66.     More than that, Iran helped Hamas plot the October 7 attack.

67.     Planning for the attack began more than two years beforehand.

68.     The attack, dubbed by Hamas as the Big Project, was masterminded by Yahya Sinwar.

69.     Soon after Sinwar was released from Israeli prison in 2011 as part of a prisoner exchange, he took control of the Qassam Bridges, Hamas' terrorism apparatus.

70.     In 2017, Sinwar was elected chairman of Hamas' political bureau, effectively becoming Hamas's leader.

71.     Thereafter, Hamas's coordination and collaboration with Iran intensified.

72.     In 2019, the Qassam Brigades sent operatives to Iran for military and special forces

training under the auspices of the IRGC-Qods Force.

73.    Hamas documents recovered after the October 7 attack reveal millions of dollars transferred from the IRGC directly to Sinwar and Haniyeh between 2014 and 2020.

74.    A Hamas memorandum from December 2022 confirms Iran's active support for Hamas, including funding of at least $7 million per month to mobilize and prepare for attacks against Israel.

75.    Internal Hamas documents make clear that Hamas's preparation and attack plans were deeply coordinated with and financed by the IRGC.

76.    Although Iran has long backed Hamas, cooperation among the groups accelerated in the months leading up to the October 7 massacre.

77.    From April to June 2023, Iranian leaders, including the Supreme Leader and President, met publicly with Hamas and other Palestinian militant groups to encourage and provide support for acts of terrorism against Israel.

78.    In July 2023, Hamas sent a topic official to Lebanon, where he met with a senior Iranian commander to request help with the assault on Israel.

79.    Officers of the IRGC worked with Hamas since August 2023 to devise air, land, and sea incursions into Israel.

80.    Details of the operation were refined during several meetings in Lebanon attended by IRGC officers and representatives of several Iran-backed militant groups, including Hezbollah.

81.    Meetings between Hamas operatives and Qods Force leaders took place biweekly since August 2023.

82.    Iran's Foreign Minister attended at least two of the meetings.

83.    On August 5, 2023, scores of Hamas operatives began a 40-day training program in Lebanon under the direction of the IRGC-Qods Force to learn how to use gliders in combat

operations.

84.    In September 2023, the deputy commander of the Qassam Bridges met with senior leaders of Hezbollah and the IRGC to finalize the operational details of the October 7 attack.

85.    As confirmed by senior members of Hamas and Hezbollah, Iranian security officials helped plan the attack and gave Hamas the green light for the assault at a meeting in Lebanon on October 2, days before the attack.

**d.  The October 7 Attack**

86.    On Saturday, October 7, 2023, Hamas launched the attack, which it officially called Operation al-Aqsa Flood.

87.    October 7 was the Jewish Sabbath and the start of Simchat Torah, a festive holiday on which the annual reading of the Torah is concluded and restarted.

88.    October 7 was also the 50th anniversary of the Yom Kippur War.

89.    At around 6:30 a.m., Hamas fired rockets and mortars into Israel.

90.    Approximately 5,000 rockets were fired into Israel during the October 7 attack, 4,000 within the first few hours.

91.    The rockets and mortars targeted civil populations throughout southern Israel.

92.    Alert sirens sounded in Israeli communities near the Gaza border, including Ashkelon, Ashdod, and Sderot—cities with large civil populations.

93.    Hamas also launched drones carrying explosives and fired projectiles at military posts along the border in order to disable the IDF's surveillance equipment and capabilities.

94.    Under cover of rocket fire, Hamas-led terrorists breached the border in at least 100 locations, using explosives, bulldozers, tractors, and wire cutters.

95.    Heavily armed terrorists entered Israel on foot, in trucks, and on motorbikes.

96.    In addition, using the training provided by the IRGC, Hamas operatives breached

the border and infiltrated Israeli communities using paragliders.

97.     Paragliders were used during the assault on the Nova Music Festival near Re'im, where hundreds of civilians were killed or wounded.

98.     Hamas terrorists were armed with automatic rifles, rocket-propelled grenades, and anti-tank weapons.

99.     Some terrorists disguised themselves as Israeli army and police officers.

100.    Several terrorists wore cameras to videotape the massacre.

101.    The terrorists targeted a multitude of cities, towns, villages, and communities, some of which they destroyed entirely.

102.    The goal was to murder and maim as many people as possible, spraying machine gun fire, executing at close range, throwing grenades, and lighting homes on fire.

103.    In total, nearly 4,000 Hamas operatives crossed the border and engaged in grotesque acts of violence and sadism, riddling infants with bullets, torturing, mutilating, and raping women and girls, beheading individuals, and burning entire families alive in their homes.

104.    During the onslaught, people hid in their saferooms, in public shelters, and even under dead bodies.

105.    Many who were spared direct physical harm still experienced severe mental anguish and emotional distress.

106.    The U.S. Secretary of State, after reviewing video footage and photos from the attack, stated at a press conference: "It's hard to find the right words. It's beyond what anyone would ever want to imagine, much less, God forbid, experience. A baby, an infant, riddled with bullets. Soldiers beheaded. Young people burned alive. I could go on, but it's simply depravity in the worst imaginable way."

107.    The terrorists also took around 250 hostages back to Gaza, including Americans.

108.    Some of the hostages remain in captivity in Gaza.

IV.    **Plaintiffs**

a.    **The Benjamini-Binyamini Family**

109.    Plaintiff Menachem Benjamini is, and was at the time of the attack, a citizen of the United States.

110.    On October 7, 2023, he was living in Kibbutz Alumim in Israel and present when the Hamas-led massacre began.

111.    Plaintiff Menachem Benjamini was 38 years old at the time of the attack.

112.    Plaintiff Asnat Binyamini, spouse of Plaintiff Menachem Benjamini, is a citizen of Israel.

113.    On October 7, 2023, Plaintiff Asnat Binyamini was also living in Kibbutz Alumim and present when the Hamas-led massacre began.

114.    Plaintiff Asnat Binyamini was 35 years old at the time of the attack.

115.    Plaintiff K.B., a minor child, is, and was at the time of the attack, a citizen of the United States and the child of Plaintiffs Menachem Benjamini and Asnat Binyamini.

116.    On October 7, 2023, Plaintiff K.B., a minor child, was living in Kibbutz Alumim and present when the Hamas-led massacre began.

117.    Plaintiff K. B., a minor child, was 8 years old at the time of the attack.

118.    Plaintiff M.B., a minor child, is, and was at the time of the attack, a citizen of the United States and the child of Plaintiffs Menachem Benjamini and Asnat Binyamini.

119.    On October 7, 2023, Plaintiff M.B., a minor child, was living in Kibbutz Alumim and present when the Hamas-led massacre began.

120.    Plaintiff M. B., a minor child, was 6 years old at the time of the attack.

121.   Plaintiff Y.B., a minor child, is, and was at the time of the attack, a citizen of the United States and the child of Plaintiffs Menachem Benjamini and Asnat Binyamini.

122.   On October 7, 2023, Plaintiff Y.B., a minor child, was living in Kibbutz Alumim and present when the Hamas-led massacre began.

123.   Plaintiff Y. B., a minor child, was 5 years old at the time of the attack.

124.   Plaintiff R.B., a minor child, is, and was at the time of the attack, a citizen of the United States and the child of Plaintiffs Menachem Benjamini and Asnat Binyamini.

125.   On October 7, 2023, Plaintiff R.B., a minor child, was living in Kibbutz Alumim and present the Hamas-led massacre began.

126.   Plaintiff R. B., a minor child, was 2 years old at the time of the attack.

127.   In the early morning of October 7, 2023, Plaintiffs Menachem Benjamini, Asnat Binyamini and their minor children, K.B., M.B., Y.B. and R.B., were at their home at Kibbutz Alumim when an artillery attack started upon them.

128.   They heard the sounds of explosions and the firing of personal weapons outside their home.

129.   Plaintiff Menachem Benjamini left the house and met up with a group of volunteers outside.

130.   He soon came face to face with several dozen terrorists just a few meters away that had entered their kibbutz who were attacking and killing his neighbors and trying to overtake their homes.

131.   Plaintiff Menachem Benjamini and the volunteers, his neighbors, fought off the terrorists and defended the kibbutz until the Army arrived.

132.   He witnessed the terrorists' damaging homes and killing those who reached the entrance of the kibbutz.

133.   Terrorists entered the kibbutz, walking around with RPG's, grenades, and rifles, damaging and burning homes.

134.   While her husband was defending the kibbutz against the terrorists, Plaintiff Asnat Binyamini rushed to the family's safe room with her four young children.

135.   They remined in the protected room for 27 hours, fearing for their own safety and the safety of their father, Plaintiff Menachem Benjamini.

136.   Plaintiff Asnat Binyamini and her children, Plaintiffs K.B., M.B., Y.B., and R.B., could hear gunshots outside.

137.   Asnat had to hold the door closed with one hand so terrorists could not break in, while also taking care of her children. Asnat had only a knife for protection against the terrorists.

138.   Plaintiff Asnat Binyamini and her children, Plaintiffs K.B., M.B., Y.B., and R.B., had very little food and water in the safe room for 27 hours and had to use a bucket in lieu of a toilet.

139.   Plaintiff Menachem Benjamini was able to join his family late in the night after the morning attack. Plaintiffs were rescued by family the following morning, when they fled their home.

140.   The Plaintiffs were displaced for nearly a year after the attack.

141.   They were evacuated and had to reside in a hotel without many of their belongings, fearing another attack and uprooted abruptly from their home.

142.   Plaintiff Menachem Benjamini suffered severe mental and emotional injuries due to stress, fear, and anxiety from fighting off terrorists around his kibbutz on October 7, 2023.

143.   He feared for his own life and safety, those of his neighbors that helped him defend the kibbutz and of his family, who were hiding in the safe room with terrorists just a few meters away.

16

144. Plaintiff Menachem Benjamini has sought the treatment of several psychologists and is still attending mental health treatment for his post-traumatic stress symptoms.

145. As a direct and foreseeable result of the October 7, 2023, attack, Plaintiff Menachem Benjamini suffered past and future noneconomic damages, including severe mental pain and suffering, loss of enjoyment of life, including medical expenses, lost income, and loss of earning capacity.

146. Plaintiff Asnat Binyamini suffered severe mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023, attack. She protected herself and her family in the safe room for 27 hours during the attack around their kibbutz. Meanwhile, she experienced extreme concern and fear for the life and safety of her husband, Menachem. Since the attacks, she has sought mental health treatment for the severe and emotional injuries she suffered on October 7, 2023, and since the attack.

147. As a direct and foreseeable result of the October 7, 2023, attack, Plaintiff Asnat Binyamini suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, medical expenses, lost income, and loss of earning capacity.

148. Plaintiff K.B., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023, attack. Plaintiff K.B., a minor child, has received mental health treatment with a therapist for the injuries suffered.

149. As a direct and foreseeable result of the October 7, 2023, attack, K.B., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

150. Plaintiff M.B., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023, attack. Plaintiff M.B., a minor child, has received mental health treatment with a therapist for the injuries he suffered.

151. As a direct and foreseeable result of the October 7, 2023, attack, M.B., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

152. Plaintiff Y.B., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack.

153. As a direct and foreseeable result of the October 7, 2023, attack, Y.B., a minor child, suffered general noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

154. Plaintiff R.B., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023, attack.

155. As a direct and foreseeable result of the October 7, 2023 attack, R.B., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

### b. The Vax Family

156. Amit Vax was a citizen of the United States and a resident of Israel when he was murdered by Hamas.

157. Amit Vax was 48 years old.

158. On October 7, 2023, Amit Vax, and his brother, were defending their town of Netiv Ha'asara near the Gaza border when they were killed by Hamas terrorists.

159. Amit Vax, an official member of the town's local security team, was killed in a gun battle with Hamas terrorists in the attack while protecting his family and his community.

160. Amit left behind his wife and their three children.

161. Plaintiff Einat Vax is a citizen and a resident of Israel. She is the spouse of Amit Vax.

162.   Plaintiff Einat Vax also brings this action on behalf of her minor child, Plaintiff U.H.V.

163.   Plaintiff U.H.V., a minor child, is, and was at the time of the attack, a citizen of the United States and a resident of Israel. He is the son of Amit Vax and Einat Vax.

164.   Plaintiff U.H.V., a minor child, was 13 years old at the time of the attack and his father's death.

165.   Plaintiff Daniel Vax is, and was at the time of the attack, a citizen of the United States and a resident of Israel. She is the daughter of Amit Vax.

166.   Plaintiff Daniel Vax was 21 years old at the time of the attack and her father's death.

167.   Plaintiff Tayla Vax is, and was at the time of the attack, a citizen of the United States and a resident of Israel. She is the daughter of Amit Vax.

168.   Plaintiff Tayla Vax was 17 years old at the time of the attack and her father's death.

169.   As a result of the October 7 attack, and the death of Amit Vax, Plaintiffs Einat Vax, U.H.V., a minor child, Daniel Vax, and Talya Vax have experienced general damages, including severe mental anguish, extreme emotion pain and suffering, loss of enjoyment of life, medical expenses, funeral expenses, and loss of Amit Vax's solatium, including society, services, companionship, comfort, protection, instruction, advice, and counsel.

**c.    Noa Kuperstein**

170.   Plaintiff Noa Kuperstein is, and was at the time of the attack, a citizen of the United States living in Israel.

171.   On October 7, 2023, she was present at Netiv Haasara and present when she and her family, including her parents and aunt, were attacked by Hamas.

172.   Noa Kuperstein was 25 years old at the time of the attack.

173.    At approximately 6:35 a.m., she and her family members were asleep in their home at Netiv Haasara when they were jolted awake by the sound of alarms and sirens.

174.    Plaintiff Noa Kuperstein rushed to the family's safe room.

175.    Within a few minutes, all the electricity had gone out, they lost phone reception and had no light or air because the door and window had to be closed.

176.    After receiving intermittent and sporadic cell service, Plaintiff Noa Kuperstein learned from her group chat that terrorists were attacking people in their homes, and she heard of others being killed.

177.    Panicked, Plaintiff Noa Kuperstein realized there were not only rockets outside, but there were terrorists all around and outside attacking their small village.

178.    Without food, air circulation or remaining cell phone battery, Plaintiff Noa Kuperstein, and her family, stayed in the safe room for 10 hours, fearing for their safety and for their lives.

179.    Plaintiff Noa Kuperstein had two panic attacks while in the safe room, hiding under the bed, when she heard shootings and screaming voices outside very close to their home.

180.    After 10 hours of hiding in the safe room, Noa Kuperstein and her family members decided to take a chance, fleeing their home and driving away to safety.

181.    The events of that day continue to traumatize Plaintiff Noa Kuperstein. To deal with the panic and anxiety she was experiencing in the weeks after the attack, she attended psychotherapy for several months to process her trauma and cope with the events of October 7, 2023.

182.    As a direct and foreseeable result of the October 7, 2023, attack, Plaintiff Noa Kuperstein suffered general damages, including severe mental anguish, extreme emotion pain and

suffering, and loss of enjoyment of life, medical expenses, lost income, and loss of earning capacity.

### d.    The Arazi-Marco Family

183.    Plaintiff Chen Arazi is, and was at the time of the attack, a citizen of the United States.

184.    She is the aunt of Plaintiff Noa Kuperstein.

185.    On October 7, 2023, Plaintiff Chen Arazi was visiting family and staying at her sister's home in Netiv Haasara when the Hamas-led massacre began.

186.    Chen Arazi was 45 years old at the time.

187.    At approximately 6:35 a.m., Plaintiff Chen Arazi was asleep at Netiv Haasara when she was were jolted awake by the sound of alarms and sirens.

188.    Plaintiff Chen Arazi rushed to the family's safe room with her sister, brother-in-law and niece. Within a few minutes, all electricity had gone out, they lost phone reception, and had no light or air because the door and window had to be closed.

189.    After receiving intermittent and sporadic cell service, Plaintiff Chen Arazi and her family learned from group chats and messages that terrorists were attacking people in their homes.

190.    She then realized there were not only rockets outside, but there were also terrorists all around, attacking their small village, causing extreme fear and panic.

191.    Plaintiff Chen Arazi and her family stayed in the safe room for 10 hours, fearing for their safety and for their lives. They remained in the safe room without food or air circulation.

192.    After 10 hours of hiding in the safe room, Chen Arazi and her family members decided to take a chance, fleeing the home, running on foot to their vehicle and speeding frantically away to safety. They could hear the sound of rockets and shooting all around them.

193.    She contacted her husband about 30 minutes later to let him know she was on her way home.

194.    The events of that day continue to traumatize Plaintiff Chen Arazi. Not only did she suffer during the attack with her family, but her best friend was also killed elsewhere that day, along with approximately 20 others she knew.

195.    She was diagnosed with post-traumatic stress disorder and has received mental health treatment from a psychiatrist. She continues to treat for her injuries and to cope with the events of October 7, 2023.

196.    Plaintiff Chen Arazi has been approved for support through Israel's social security and was placed on temporary disability for her severe post-traumatic stress disorder.

197.    As a direct and foreseeable result of the October 7, 2023 attack, Plaintiff Chen Arazi suffered general damages, including severe mental anguish, extreme emotion pain and suffering, and loss of enjoyment of life, and medical expenses, lost income, and loss of earning capacity.

198.    Plaintiff Roy Marco is the husband of Plaintiff Chen Arazi.

199.    Plaintiff Roy Marco is, and was at the time of the attack, a citizen of United States.

200.    Plaintiff Roy Marco was 45 years old at the time of the attack.

201.    Though he was not present with his wife, who was visiting family, Plaintiff Roy Marco has suffered as a result of the October 7 attack.

202.    The fear for his wife's safety and the possibility of losing her traumatized him. He has since been concerned about her mental health and wellbeing since the attack and her diagnosis of post-traumatic stress disorder that followed.

203.    As a result of the October 7 massacre, Plaintiff Roy Marco suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic losses.

204.   Plaintiff H.M., a minor child, is the daughter of Plaintiffs Chen Arazi and Plaintiff Roy Marco.

205.   Plaintiff H.M. is, and was at the time of the attack, a citizen of United States.

206.   Plaintiff H.M., a minor child, was 15 years old at the time of the attack.

207.   Plaintiff H.M., a minor child, suffered anxiety and the fear of losing her mother as a result of the October 7 attack and continues to suffer emotionally.

208.   As a result of the October 7 massacre, Plaintiff H.M., a minor child, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic losses.

209.   Plaintiff G.M., a minor child, is the daughter of Plaintiffs Chen Arazi and Plaintiff Roy Marco.

210.   Plaintiff G.M. is, and was at the time of the attack, a citizen of United States.

211.   Plaintiff G.M. was 11 years old at the time of the attack.

212.   As a result of the October 7 massacre, Plaintiff G.M., a minor child, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic losses.

**e.    The Avraham Family**

213.   Plaintiff Tamir Avraham is, and was at the time of the attack, a citizen of the United States.

214.   On October 7, 2023, he was in Israel visiting family and staying in Moshav Bitkha when the Hamas-led massacre began.

215.   Plaintiff Tamir Avraham was 39 years old at the time of the attack.

216.   Plaintiff Patricia Avraham, spouse of Plaintiff Tamir Avraham, is, and was at the time of the attack, a citizen of the United States.

217.   She also was staying in Moshav Bitkha when the attack occurred on October 7, 2023.

218.   Plaintiff Patricia Avraham was 45 years old at the time of the attack.

219.   On the morning of October 7, 2023, at approximately 6:20 a.m., Plaintiff Tamir Avraham and Plaintiff Patricia Avraham were asleep at Tamir's parent's home in Moshav Bitkha when they were jolted awake by the sound of explosions.

220.   Plaintiff's sister started yelling that there were alarms and sirens.

221.   Plaintiffs Tamir and Patricia had to immediately get from the fourth floor of the home where they were sleeping, down to the safe room on the first floor.

222.   Plaintiff's Tamir Avraham and Patricia Avraham were made aware of the attacks and the terrorists in town via text messages from family and friends.

223.   Plaintiff's Tamir Avraham and Patricia Avraham spent most of October 7, 2023, in and out of the safe room.

224.   The day was very hot and very chaotic.

225.   The power was out until approximately 3:00 a.m. the next day.

226.   On this very stressful day, they witnessed the smoke in Gaza and heard helicopters above.

227.   Terrorists were in the area and scouting out the Moshav and their family home.

228.   One of the terrorists was later found hiding in the Moshav.

229.   Plaintiff Tamir Avraham suffered mental and emotional injuries due to stress, fear, lack of sleep and anxiety from, and following, the attack by Hamas.

230.   Plaintiff Tamir Avraham is the caretaker for his disabled parents and for his siblings. After the attack, he had to stay in Israel with his family at Moshav Bitkha to care for them. Separating from his wife, Plaintiff Patricia Avraham, who returned to their home in the United States, further contributed to his stress and anxiety, worrying about his wife's well-being.

231.   As a direct and foreseeable result of the October 7 attack, Plaintiff Tamir Avraham suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses, lost income, and loss of earning capacity.

232.   Plaintiff Patricia Avraham suffers from asthma and found it difficult to breathe on the day of the attack, especially in the safe room, which was very hot and without air conditioning or circulation. Due to the loss of electricity, she was unable to connect to her nebulizer and struggled with her breathing. Additionally, the chemicals from the rockets that were falling that day diminished the air quality, further aggravating her asthma.

233.   Plaintiff Patricia Avraham suffered from panic, fear, anxiety and PTSD as a result of the October 7, 2023 attack.

234.   Further contributing to her post traumatic symptoms, she then had to separate from her husband, Plaintiff Tamir Avraham, going to stay in Tel Aviv with family before she returned to her and her husband's home in the United States.

235.   Once she back in the United States, she began weekly counseling for her anxiety and post-traumatic stress symptoms.

236.   Upon her return to the United States, Plaintiff Patricia Avraham also suffered from tachycardia for several weeks following the attack. Her elevated heart rate was evaluated by a doctor, diagnosed and attributed to her experience on October 7, 2023.

237.   As a direct and foreseeable result of the October 7, 2023, attack, the Plaintiff Patricia Avraham suffered general damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and medical expenses, lost income, and loss of earning capacity.

f.    **The Abitboul Isralowitz Family**

238.    Plaintiff Orli Abitboul Isralowitz is, and was at the time of the attack, a citizen of the United States.

239.    On October 7, 2023, Plaintiff Orli Abitboul Isralowitz was living in Kibbutz Revivim and present during the attack led by Hamas.

240.    Plaintiff Orli Abitboul Isralowitz was 38 years old at the time of the attack.

241.    Plaintiff N.A., a minor child, is, and was at the time of the attack, a citizen of the United States.

242.    Plaintiff N.A., a minor child, is the child of Plaintiff Orli Abitboul Isralowitz.

243.    Plaintiff N.A., a minor child, was living in Kibbutz Revivim and was present during the Hamas-led attack.

244.    Plaintiff N.A., a minor child, was 12 years old at the time of the attack.

245.    Plaintiff N.Y. A., a minor child, is, and was at the time of the attack, a citizen of the United States.

246.    Plaintiff N.Y. A., a minor child, is the child of Plaintiff Orli Abitboul Isralowitz.

247.    Plaintiff N.Y. A., a minor child, was living in Kibbutz Revivim and was present during the Hamas-led attack.

248.    Plaintiff N.Y. A., a minor child, was 10 years old at the time of the attack.

249.    Plaintiff R.A., a minor child, is, and was at the time of the attack, a citizen of the United States.

250.    Plaintiff R.A., a minor child, is the child of Plaintiff Orli Abitboul Isralowitz.

251.    Plaintiff R.A., a minor child, was living in Kibbutz Revivim in Israel and was present during the Hamas-led attack.

252.    Plaintiff R.A., a minor child, was 6 years old at the time of the attack.

253.    On the morning of October 7, 2023, at approximately 6:15 a.m., Plaintiffs Orli Abitboul Isralowitz and her three minor children, Plaintiffs N.A., N.Y. A., and R.A., were asleep

in their home in Kibbutz Revivim when they were jolted awake by their house and windows violently shaking. They walked out into the street and saw the missiles flying overhead.

254.    The family does not have a safe room in their house, so Plaintiff Orli Abitboul Isralowitz ran herself and her three children to a friend's home in their Kibbutz that had a safe room for them to hide.

255.    Plaintiffs Orli Abitboul Isralowitz, N.A., N.Y.A., and R.A. spent October 7, 2023, in the safe room, frightened for their own safety and fearing for their lives.

256.    Plaintiff Orli Abitboul Isralowitz has suffered mental injuries as a result of the attack, experiencing extreme fear and anxiety as a result of the October 7 attack.

257.    She has since been concerned about her family's safety and in particular the well-being and mental injuries suffered by her children.

258.    As a direct and foreseeable result of the October 7, 2023, attack, Plaintiff Orli Abitboul Isralowitz suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, medical expenses, lost income, and loss of earning capacity.

259.    Plaintiff N.A., a minor child, was diagnosed with an anxiety disorder, suffering from night fear, nightmares and constant restlessness. She began therapy and has been prescribed medication to calm her and treat her anxiety.

260.    As a direct and foreseeable result of the October 7, 2023 attack, Plaintiff N.A., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

261.    Plaintiff N.Y.A., a minor child, was diagnosed with anxiety, suffering from outbursts of anger and difficulty regulating emotions. Plaintiff N.Y.A. has been in psychological treatment for anxiety and post-trauma symptoms.

262.    As a direct and foreseeable result of the October 7, 2023, attack, Plaintiff N.Y.A., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

263.    Plaintiff R.A., a minor child, has been suffering from and exhibiting emotions of fear and anxiety, especially at night or at the sound of an alarm. Plaintiff R.A. has been in psychological treatment for her fear and post-trauma symptoms.

264.    As a direct and foreseeable result of the October 7, 2023, attack, Plaintiff R.A., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

**g.    The McNeill Family**

265.    Plaintiff Elizabeth McNeill is, and was at the time of the attack, a citizen of the United States.

266.    Plaintiff Elizabeth McNeill was residing in Tel Aviv with her fiancé at the time of the Hamas-led attack on October 7, 2023.

267.    Plaintiff Elizabeth McNeill was 27 years old at the time of the attack.

268.    Plaintiff Elizabeth was an Israeli Defense Force soldier, not on active duty since 2020, living in Tel Aviv with her husband as a civilian.

269.    Plaintiff Elizabeth McNeill woke to her apartment building shaking and with no bomb shelter to seek refuge.

270.    She immediately began getting in touch with friends and was notified of the Hamas-led attacks.

271.    She was immediately called back to reserve duty on the morning of October 7, 2023.

272.    She left Tel Aviv and was sent directly that day to Beersheba in southern Israel.

273.   She was first assigned to work checkpoints between Beersheba and Netivot to secure the area.

274.   She was then assigned to search and rescue of attack survivors and saw firsthand the gruesome aftermath of the Hamas-led attack, witnessing the burned and bloody remains of those killed in the attack and the destruction at Kibbutz Kfar Aza.

275.   Plaintiff Elizabeth McNeill remained in the area IDF Reserve soldier, continuing to assist in the recovery of the aftermath of the attack for several months.

276.   She attended the funerals of those killed on October 7, 2023, and provided aid to families.

277.   The events and the aftermath of October 7, 2023, attack traumatized Plaintiff Elizabeth McNeill, which continues today.

278.   She suffered mental and emotional injuries and began treatment with a therapist. She still suffers from nightmares about the attack and what she saw in the aftermath.

279.   As a direct and foreseeable result of the October 7, 2023 attack, Plaintiff Elizabeth McNeill suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses, lost income, and loss of earning capacity.

280.   Plaintiff Joyce Soll is the mother of Plaintiff Elizbeth McNeill.

281.   Plaintiff Joyce Soll is, and was at the time of the attack, a citizen of United States.

282.   Plaintiff Joyce Soll was 63 years old at the time of the attack.

283.   Plaintiff Joyce Soll experienced extreme fear and anxiety as a result of the October 7 attack. The fear of losing her daughter caused her great sadness and anxiety, both on October 7, 2023, attack and during the months of her IDF service that followed. Joyce sought treatment with a therapist for the mental injuries she suffered.

284.   As a result of the October 7 massacre, Plaintiff Joyce Soll suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic losses.

285.   Plaintiff Stephen Soll is the stepfather of Plaintiff Elizbeth McNeill. Plaintiff Elizabeth McNeill maintains a close relationship with Plaintiff Stephen Soll. He became her stepfather at age 13 and became a father figure in her life, developing a close relationship and filling the role as a parent, the functional equivalent of a father.

286.   Stephen Soll is, and was at the time of the attack, a citizen of United States.

287.   Plaintiff Stephen Soll was 62 years old at the time of the attack.

288.   Plaintiff Stephen Soll experienced extreme fear and anxiety as a result of the October 7 attack. He worried about his stepdaughter's safety and also experienced concern and anxiety caring for his spouse, Joyce Soll, who was seeking treatment from a therapist to deal with the fear and anxiety about her daughter.

289.   As a result of the October 7 massacre, Plaintiff Stephen Soll suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic loss.

**h.    The Nishry Danon Family**

290.   Plaintiff Tamar Nishry Danon is, and was at the time of the attack, a citizen of the United States.

291.   On October 7, 2023, she was domiciled in Ness Tziona and present when the Hamas-led massacre began.

292.   Plaintiff Tamar Nishry Danon was 39 years old at the time of the attack.

293.   Plaintiff Rouy Yosef Danon, spouse of Plaintiff Tamar Nishry Danon, is a citizen of Israel.

294.   On October 7, 2023, Plaintiff Rouy Yosef Danon was also domiciled in Ness Tziona and present when the Hamas-led massacre began.

295.   Plaintiff Rouy Yosef Danon was 41 years old at the time of the attack.

296.   Plaintiff C.D., a minor child, is a citizen of Israel and the child of Plaintiffs Tamar Nishry Danon and Rouy Yosel Danon.

297.   On October 7, 2023, Plaintiff C.D., a minor child, was domiciled in Ness Tziona and present when the Hamas-led massacre began.

298.   Plaintiff C.D., a minor child, was 10 years old at the time of the attack.

299.   Plaintiff N.D., a minor child, is a citizen of Israel and the child of Plaintiffs Tamar Nishry Danon and Rouy Yosel Danon.

300.   On October 7, 2023, Plaintiff N.D., a minor child, was domiciled in Ness Tziona and present when the Hamas-led massacre began.

301.   Plaintiff N.D., a minor child, was 7 years old at the time of the attack.

302.   Plaintiff O.D., a minor child, is a citizen of Israel and the child of Plaintiffs Tamar Nishry Danon and Rouy Yosel Danon.

303.   On October 7, 2023, Plaintiff O.D., a minor child, was domiciled in Ness Tziona and present when the Hamas-led massacre began.

304.   Plaintiff O.D., a minor child, was 3 years old at the time of the attack.

305.   In the early morning of October 7, 2023, Tamar Nishry Danon, Rouy Yosef Danon and their minor children, C.D., N.D., and O.D., were at their home in Ness Tziona when they heard the sounds of sirens and immediately sought refuge in their safe room.

306.   While Plaintiffs were locked in their safe room, facing fear and uncertainty during the attack and the threat of terrorists, a rocket struck just beside their building, hitting the garden area surrounding their home.

307.    Their home sustained substantial property damages as a result of the rocket strike.

308.    The family had to move from their home in Ness Tziona to live elsewhere while the building was repaired, leaving the family uprooted and displaced for many weeks.

309.    Plaintiff Tamar Nishry Danon suffered severe mental and emotional injuries due to stress, fear, and anxiety from the attack on October 7, 2023. Her stress and anxiety were compounded by the property damage to her home and being displaced for several weeks following the attack.

310.    Plaintiff Tamar Nishry Danon has received mental health treatment with a therapist as a result of the psychological injuries she suffered from the attack.

311.    As a direct and foreseeable result of the October 7, 2023, attack, Tamar Nishry Danon suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, medical expenses, lost income, and loss of earning capacity.

312.    Plaintiff Rouy Yosef Danon suffered severe mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023, attack. His stress and anxiety were also compounded by the property damage to his home and being displaced for several weeks following the attack.

313.    As a direct and foreseeable result of the October 7, 2023 attack, Plaintiff Rouy Yosef Danon suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses, lost income, and loss of earning capacity.

314.    Plaintiff C.D., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023, attack. She has attended mental health treatment with a therapist to deal with the injuries she sustained from the attack.

315.    As a direct and foreseeable result of the October 7, 2023, attack, C.D., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

316.    Plaintiff N.D., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023, attack. She has attended mental health treatment with a therapist to deal with the injuries she sustained from the attack.

317.    As a direct and foreseeable result of the October 7, 2023, attack, N.D., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

318.    Plaintiff O.D., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023, attack.

319.    As a direct and foreseeable result of the October 7, 2023, attack, O.D., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

### i.    The Melon Family

320.    Plaintiff Karen Melon is, and was at the time of the attack, a citizen of the United States.

321.    On October 7, 2023, she was domiciled at Kibbutz Bror Hayil in Israel and present when the Hamas-led massacre began.

322.    Plaintiff Karen Melon was 39 years old at the time of the attack.

323.    Plaintiff Yaniv Melon, spouse of Plaintiff Karen Melon, is a citizen of Brazil.

324.    On October 7, 2023, Plaintiff Yaniv Melon was also domiciled at Kibbutz Bror Hayil and present when the Hamas-led massacre began.

325.    Plaintiff Yaniv Melon was 38 years old at the time of the attack.

326. Plaintiff E.M., a minor child, is a citizen of Israel and the child of Plaintiffs Karen Melon and Yaniv Melon.

327. On October 7, 2023, Plaintiff E.M., a minor child, was domiciled at Kibbutz Bror Hayil and present when the Hamas-led massacre began.

328. Plaintiff E.M., a minor child, was 5 years old at the time of the attack.

329. Plaintiff T.M., a minor child, is a citizen of Israel and the child of Plaintiffs Karen Melon and Yaniv Melon.

330. On October 7, 2023, Plaintiff T.M., a minor child, was domiciled at Kibbutz Bror Hayil and present when the Hamas-led massacre began.

331. Plaintiff T.M., a minor child, was 3 years old at the time of the attack.

332. Plaintiff A.M., a minor child, is a citizen of Israel and the child of Plaintiffs Karen Melon and Yaniv Melon.

333. On October 7, 2023, Plaintiff A.M., a minor child, was domiciled at Kibbutz Bror Hayil and present when the Hamas-led massacre began.

334. Plaintiff A.M., a minor child, was 5 years old at the time of the attack.

335. In the early morning of October 7, 2023, at approximately 6:30 a.m., Plaintiffs Karen Melon, Yaniv Melon, E.M., T.M. and A.M., were at their home in Kibbutz Bror Hayil when they heard the sounds of guns and bombs and felt a violent shaking directly under their home.

336. Learning of the attack and that there were terrorists in the area, Plaintiff Karen Melon, E.M., T.M. and A.M., immediately rushed to their family safe room.

337. Plaintiff Yaniv Melon, a member of the military, went outside to guard the kibbutz, without a gun for protection. Terrorists were trying to infiltrate and overtake the kibbutz. The terrorists made it to the gate, but were unable to make it inside, stopped by the residents protecting it.

338.   Plaintiffs Karen Melon, E.M., T.M., and A.M., spent the entire day in the safe room, afraid and fearing for their lives and for the safety of Yaniv, who was guarding the kibbutz.

339.   Fearing for their safety, Plaintiffs Karen Melon, Yaniv Melon, E.M., T.M., and A.M., left their home the day after the attack. The family packed what possession they could but had to move from place to place until they were able to find a hotel to reside in several weeks later.

340.   Displaced without a permanent home, Plaintiffs have been residing outside Israel with the help of friends, where they remain today.

341.   Plaintiff Karen Melon suffered severe mental and emotional injuries due to stress, fear, and anxiety she suffered on October 7, 2023. She has difficulty sleeping, anxiety about the safety of her children and family, and concerns about their livelihood, since they have been displaced from their home since the attack.

342.   Plaintiff Karen Melon also suffered physical injuries as a result of the attack.

343.   As a direct and foreseeable result of the October 7, 2023, attack, Karen Melon suffered general noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, medical expenses, lost income, and loss of earning capacity.

344.   Plaintiff Yaniv Melon suffered severe mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023, attack. He has feared for the safety and wellbeing of his family, has been displaced from his home and has lost his livelihood as a direct result of the October 7 attack.

345.   As a direct and foreseeable result of the October 7, 2023, attack, Plaintiff Yaniv Melon suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, lost income, and loss of earning capacity.

346.   Plaintiff E.M., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023, attack.

35

347. As a direct and foreseeable result of the October 7, 2023, attack, E.M., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

348. Plaintiff T.M., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023, attack.

349. As a direct and foreseeable result of October 7, 2023, attack, T.M., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

350. Plaintiff A.M., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023, attack.

351. As a direct and foreseeable result of the October 7, 2023, attack, A.M., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

### j.    The Simon Family

352. Plaintiff Itamar Simon is a Canadian citizen.

353. On October 7, 2023, He was domiciled at Kibbutz Sa'ad in Israel and present when the Hamas-led massacre began.

354. Plaintiff Itamar Simon was 41 years old at the time of the attack.

355. Plaintiff Osnat Simon Kovshi, spouse of Plaintiff Itamar Simon, was a citizen of Israel at the time of the acts alleged.

356. On October 7, 2023, Plaintiff Osnat Simon Kovshi was also domiciled at Kibbutz Sa'ad and present when the Hamas-led massacre began.

357. Plaintiff Osnat Simon Kovshi was 40 years old at the time of the attack.

358.    Plaintiff H.S., a minor child, is a citizen of Israel and the child of Plaintiffs Itamar Simon and Osnat Simon Kovshi.

359.    On October 7, 2023, Plaintiff H.S., a minor child, was domiciled at Kibbutz Sa'ad and present when the Hamas-led massacre began.

360.    Plaintiff H.S., a minor child, was 10 years old at the time of the attack.

361.    Plaintiff M.S., a minor child, is a citizen of Israel and the child of Plaintiffs Itamar Simon and Osnat Simon Kovshi.

362.    On October 7, 2023, Plaintiff M.S., a minor child, was domiciled at Kibbutz Sa'ad and present when the Hamas-led massacre began.

363.    Plaintiff M.S., a minor child, was 9 years old at the time of the attack.

364.    Plaintiff I.S., a minor child, is a United States citizen and the child of Plaintiffs Itamar Simon and Osnat Simon Kovshi.

365.    On October 7, 2023, Plaintiff I.S., a minor child, was domiciled at Kibbutz Sa'ad and present when the Hamas-led massacre began.

366.    Plaintiff I.S., a minor child, was 6 years old at the time of the attack.

367.    Plaintiff R.S., a minor child, is a citizen of Israel and the child of Plaintiffs Itamar Simon and Osnat Simon Kovshi.

368.    On October 7, 2023, Plaintiff R.S., a minor child, was domiciled at Kibbutz Sa'ad and present when the Hamas-led massacre began.

369.    Plaintiff R.S., a minor child, was 2 years old at the time of the attack.

370.    In the early morning of October 7, 2023, Plaintiffs Itamar Simon, Osnat Simon Kovshi, H.S., M.S., I.S. and R.S., were at their home in Kibbutz Sa'ad when they woke the sounds of rockets and bombs and felt the violent shaking of the Hamas-led attack.

371.    Learning of the attack and the terrorists in the area, Plaintiffs Itamar Simon, Osnat Simon Kovshi and their minor children, H.S., M.S., I.S. and R.S., immediately ran to take cover to their bomb shelter.

372.    Plaintiff H.S., who was sleeping in the sukkah, ran to join his family in the shelter and was physically injured on the way, arriving with a laceration on his leg and in a state of hysteria.

373.    Plaintiffs Itamar Simon, Osnat Simon Kovshi and their minor children, H.S., M.S., I.S. and R.S., remained in the shelter all day, The spent 24 hours in mortal fear, constantly hearing gunfire, screams and the burning smell from Kfar Aza.

374.    The Simon Family considered fleeing the kibbutz several times to safety, but it was forbidden, and they knew of the great dangers either way.

375.    They were able to flee the day following the attack and evacuated the war zone for 5 months, leaving their home and many of their possession behind until they were able to return.

376.    Plaintiff Itamar Simon suffered severe mental and emotional injuries due to stress, fear, and anxiety as a result of the attack on October 7, 2023. He has sought mental health counseling to deal with the emotional effect of the attack on him and his family.

377.    As a direct and foreseeable result of the October 7, 2023, attack, Itamar Simon suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, medical expenses, lost income, and loss of earning capacity.

378.    Plaintiff Osnat Simon Kovshi suffered severe mental and emotional injuries due to stress, fear, and anxiety as a result of the attack on October 7, 2023. She suffered severe panic attack while in the shelter the day of the attack, worried for herself and her family. Since the attack, she has attended counseling with her children to process her emotional injuries she suffered in the attack and to help her children navigate the extreme fear, nightmares and anxiety that her children suffered during and since the attack.

379.   As a direct and foreseeable result of the October 7, 2023, attack, Plaintiff Osnat Simon Kovshi suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, medical expenses, lost income, and loss of earning capacity.

380.   Plaintiff H.S., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack. He was physically injured during the attack, suffering a laceration to his leg while running to the family shelter, arriving in a state of hysteria. He has been attending weekly therapy and counseling to manage the emotions he experienced during the attack, including panic attacks, and the emotional reactions since, including lashing out, biting, acting out. Plaintiff H.S., a minor child, has been experiencing nightmares and feeling unsafe at home.

381.   As a direct and foreseeable result of the October 7, 2023, attack, H.S., a minor child, suffered general damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and medical expenses.

382.   Plaintiff M.S., a minor child, suffered mental and emotional injuries due to stress, fear and anxiety as a result of the October 7, 2023 attack. M.S., a minor child, has been attending weekly therapy and counseling with his parents to manage the emotions he experienced during the attack and the feeling of fear, nightmares and feeling unsafe at home that he has felt since.

383.   As a direct and foreseeable result of the October 7, 2023, attack, M.S., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

384.   Plaintiff I.S., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack. He has also attended counseling with his parents to manage the emotions he experienced during the attack and to process the feeling of fear he felt in during the attack and the nightmares and unsafety he has experienced since.

385.    As a direct and foreseeable result of the October 7, 2023, attack, I.S., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

386.    Plaintiff R.S., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack. He has also attended counseling with his parents to manage the emotions he experienced during the attack and the emotions he has felt since.

387.    As a direct and foreseeable result of the October 7, 2023, attack, R.S., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

### k.    The Riesel-Danino Family

388.    Plaintiff Tali Riesel-Danino is, and was at the time of the attack, a United States citizen.

389.    On October 7, 2023, she was on vacation in Kibbutz Urim in Israel and present when the Hamas-led massacre began.

390.    Plaintiff Tali Riesel-Danino was 38 years old at the time of the attack.

391.    Plaintiff Yehuda Danino, spouse of Plaintiff Tali Riesel-Danino, is a citizen of Israel at the time of the acts alleged.

392.    On October 7, 2023, Plaintiff Yehuda Danino was at Kibbutz Urim and present when the Hamas-led massacre began.

393.    Plaintiff Yehuda Danino was 42 years old at the time of the attack.

394.    Plaintiff T.D., a minor child, is a citizen of Israel and the child of Plaintiffs Tali Riesel-Danino and Yehuda Danino.

395.    On October 7, 2023, Plaintiff T.D., a minor child, was at Kibbutz Urim and present when the Hamas-led massacre began.

396.    Plaintiff T.D., a minor child, was 5 years old at the time of the attack.

397.    Plaintiff N.D., a minor child, is a citizen of Israel and the child of Plaintiffs Tali Riesel- Danino and Yehuda Danino

398.    On October 7, 2023, Plaintiff N.D., a minor child, was at Kibbutz Urim and present when the Hamas-led massacre began.

399.    Plaintiff N.D., a minor child, was 3 years old at the time of the attack.

400.    Plaintiff I.D., a minor child, is a citizen of Israel and the child of Plaintiffs Tali Riesel-Danino and Yehuda Danino

401.    On October 7, 2023, Plaintiff I.D., a minor child, was at Kibbutz Urim and present when the Hamas-led massacre began.

402.    Plaintiff I.D., a minor child, was 8 months old at the time of the attack.

403.    In the early morning of October 7, 2023, Plaintiffs Tali Riesel-Danino, Yehuda Danino and their minor children, T.D., N.D. and I.D., were at Kibbutz Urim near Gaza when they woke to the sound of the alarms. They were very afraid, frantically running around and searching for shelter at the kibbutz.

404.    Plaintiffs Tali Riesel-Danino, Yehuda Danino and their minor children, T.D., N.D. and I.D., managed to find shelter at the kibbutz. Terrorists had entered the kibbutz and were all around, leaving the Plaintiffs in extreme fear of the terrorists surrounding them.

405.    Plaintiffs Tali Riesel-Danino, Yehuda Danino and their minor children, T.D., N.D. and I.D., were inside the shelter for 24 hours without any food or water. They were approximately one kilometer from the Nova Festival, where terrorists attacked and killed over 370 people. Those who could escape from the Nova massacre ran to the kibbutz that the Plaintiffs were at and sought

refuge in the same shelter. Plaintiffs spent the night in the crowded shelter, hearing gunfire and artillery shelling throughout the night.

406.    After 24 hours, Plaintiffs Tali Riesel-Danino, Yehuda Danino and their minor children, T.D., N.D. and I.D., fled the kibbutz, getting in their car and driving away. Along the way, they witnessed the destruction from the attack, including dead bodies and burned vehicles.

407.    Plaintiffs Tali Riesel-Danino, Yehuda Danino and their minor children, T.D., N.D. and I.D., made it back home but a bomb had also struck their town.

408.    Plaintiff Tali Riesel-Danino suffered severe mental and emotional injuries due to stress, fear, and anxiety of the attack on October 7, 2023. She has been treated by a psychologist for the post traumatic symptoms she has experienced. She has also developed sleep disorders, hypervigilance to loud noises and loss of appetite from her anxiety, resulting in significant weight loss.

409.    As a direct and foreseeable result of the October 7, 2023, attack, Tali Riesel-Danino suffered general damages, including severe physical and mental pain and suffering and loss of enjoyment of life, medical expenses, lost income, and loss of earning capacity.

410.    Plaintiff Yehuda Danino suffered severe mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack. He has treated with a psychologist for the post traumatic symptoms he experienced. Plaintiff is very anxious and nervous throughout the day and has trouble sleeping at night.

411.    As a direct and foreseeable result of the October 7, 2023 attack, Plaintiff Yehuda Danino suffered general noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, medical expenses, lost income, and loss of earning capacity.

412.    Plaintiff T.D., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack. He has developed facial tics as a response to his anxiety. He has received mental health treatment.

413.    As a direct and foreseeable result of the October 7, 2023, attack, T.D., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

414.    Plaintiff N.D., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack. He has developed a regression in his needs in response to being alone. He has received mental health treatment.

415.    As a direct and foreseeable result of the October 7, 2023, attack, N.D., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

416.    Plaintiff I.D., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack.

417.    As a direct and foreseeable result of the October 7, 2023, attack, I.D., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and including medical expenses.

**l.    The Ederi Family**

418.    Plaintiff Yosi Ederi is, and was at the time of the attack, a citizen of the United States.

419.    On October 7, 2023, he was visiting family in Sderot, Israel and present when the Hamas-led massacre began.

420.    Plaintiff Yosi Ederi was 32 years old at the time of the attack.

421.    Plaintiff Carmel Ederi, spouse of Plaintiff Yosi Ederi, was a citizen of Israel at the time of the acts alleged and is now a dual citizen of Israel and the United States.

422.    On October 7, 2023, Plaintiff Carmel Ederi was visiting family in Sderot and present when the Hamas-led massacre began.

423.    Plaintiff Carmel Ederi was 31 years old at the time of the attack.

424.    Plaintiff L.E., a minor child, is, and was at the time of the attack, a citizen of the United States and the child of Plaintiffs Yosi Ederi and Carmel Ederi.

425.    On October 7, 2023, Plaintiff L.E., a minor child, was visiting family in Sderot and present when the Hamas-led massacre began

426.    Plaintiff L.E., a minor child, was 8 years old at the time of the attack.

427.    Plaintiff M.E., a minor child, is, and was at the time of the attack, a citizen of the United States and the child of Plaintiffs Yosi Ederi and Carmel Ederi.

428.    On October 7, 2023, Plaintiff M.E., a minor child, was visiting family in Sderot and present when the Hamas-led massacre began

429.    Plaintiff M.E., a minor child, was 3 years old at the time of the attack.

430.    Plaintiff E.E., a minor child, is, and was at the time of the attack, a citizen of the United States and the child of Plaintiffs Yosi Ederi and Carmel Ederi.

431.    On October 7, 2023, Plaintiff E.E., a minor child, was visiting family in Sderot and present when the Hamas-led massacre began

432.    Plaintiff E.E., a minor child, was 10 months old at the time of the attack.

433.    In the early morning of October 7, 2023, at approximately 6:30 a.m., Plaintiffs Yosi Ederi, Carmel Ederi, and their minor children, Plaintiffs L.E., M.E. and E.E., were staying at Yosi's fathers' home in Sderot, which was just two blocks from the police station that was overtaken by terrorists.

434.   Learning of the attack and that there were terrorists in the area, Plaintiffs could hear gunfire outside.

435.   Experiencing chaos and fear, the family hid in the safe room at the home. The electricity went out for several hours, only adding to the stress and uncertainty of the situation.

436.   Plaintiffs Yosi Ederi, Carmel Ederi, L.E., M.E. and E.E., were evacuated by rescue teams to Lehavim, and from there they were moved to central Israel.

437.   In order for Plaintiffs Yosi Ederi, Carmel Ederi, L.E., M.E. and E.E., to return home to the United States out of the war zone, the family undertook a large financial burden booking last minute airline tickets back to California.

438.   Plaintiffs also took Yosi's mother with them when they fled, who was in final stages of cancer, not wanting to leave her in Israel for her final days during the turmoil of the massacre and its aftermath. The Plaintiffs had to manage her illness in the United States, unprepared in a challenging time without any support.

439.   Plaintiff Yosi Ederi suffered severe mental and emotional injuries due to stress, fear and anxiety as result of the attack on October 7, 2023. He has suffered anxiety and was diagnosed with post-traumatic stress disorder as a result of the attack for which he has received treatment.

440.   As a direct and foreseeable result of the October 7, 2023, attack, Yosi Ederi suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, medical expenses, lost income, and loss of earning capacity.

441.   Plaintiff Carmel Ederi suffered severe mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack. She sought treatment and counseling for the mental injuries she suffered from the attack and has been prescribed medication for the anxiety she has experienced.

442.   As a direct and foreseeable result of the October 7, 2023, attack, Plaintiff Carmel Ederi suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, medical expenses, lost income, and loss of earning capacity.

443.   Plaintiff L.E., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack. The events were traumatizing for L.E., not fully understanding what was happening. The isolation in the safe room created severe fear and nighttime anxiety has developed. L.E. has attended counseling for the mental injuries suffered in the October 7, 2023 attack.

444.   As a direct and foreseeable result of the October 7, 2023, attack, L.E., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

445.   Plaintiff M.E., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack. The events were traumatizing for the child. The isolation in the safe room created severe fear and nighttime anxiety has developed. Plaintiff M.E., a minor child, has attended counseling for the mental injuries suffered in the October 7, 2023 attack.

446.   As a direct and foreseeable result of the October 7, 2023 attack, M.E., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

447.   Plaintiff E.E., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack.

448.   As a direct and foreseeable result of the October 7, 2023, attack, E.E., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

### m.    The Lichy Family

449.    Plaintiff Chaim Lichy is, and was at the time of the attack, a citizen of the United States.

450.    On October 7, 2023, he was living in Shuva, Israel and was present when the Hamas-led massacre began.

451.    Plaintiff Chaim Lichy was 36 years old at the time of the attack.

452.    Plaintiff Michala Hershkovich, spouse of Plaintiff Chaim Lichy, is, and was at the time of the attack, a citizen of the United States.

453.    On October 7, 2023, she was living in Shuva, Israel and was present when the Hamas-led massacre began.

454.    Plaintiff Michala Hershkovich was 35 years old at the time of the attack.

455.    Plaintiff R.A.L., a minor child, is, and was at the time of the attack, a citizen of the United States. He is the son of Plaintiffs Chaim Lichy and Michala Hershkovich.

456.    On October 7, 2023, Plaintiff R.A.L., a minor child, was living in Shuva, Israel and was present when the Hamas-led massacre began.

457.    Plaintiff R.A.L., a minor child, was 11 years old at the time of the attack.

458.    Plaintiff R.M.L., a minor child, is, and was at the time of the attack, a citizen of the United States. She is the daughter of Plaintiffs Chaim Lichy and Michala Hershkovich.

459.    On October 7, 2023, Plaintiff R.M.L., a minor child, was living in Shuva, Israel and was present when the Hamas-led massacre began.

460.    Plaintiff R.M.L., a minor child, was 9 years old at the time of the attack.

461.    Plaintiff C.L., a minor child, is, and was at the time of the attack, a citizen of the United States. She is the daughter of Plaintiffs Chaim Lichy and Michala Hershkovich.

462.   On October 7, 2023, Plaintiff C.L., a minor child, was living in Shuva, Israel and was present when the Hamas-led massacre began.

463.   Plaintiff C.L., a minor child, was 6 years old at the time of the attack.

464.   Plaintiff S.L., a minor child, is, and was at the time of the attack, a citizen of the United States. She is the daughter of Plaintiffs Chaim Lichy and Michala Hershkovich.

465.   On October 7, 2023, Plaintiff S.L., a minor child, was living in Shuva, Israel and was present when the Hamas-led massacre began.

466.   Plaintiff S.L., a minor child, was 3 years old at the time of the attack.

467.   Plaintiff E.L., a minor child, is, and was at the time of the attack, a citizen of the United States. He is the son of Plaintiffs Chaim Lichy and Michala Hershkovich.

468.   On October 7, 2023, Plaintiff E.L., a minor child, was living in Shuva, Israel and was present when the Hamas-led massacre began.

469.   Plaintiff E.L., a minor child, was 1 year old at the time of the attack.

470.   In the early morning of October 7, 2023, at approximately 6:30 a.m., Plaintiffs Chaim Lichy, Michala Hershkovich and their minor children R.A.L., R.M.L. and C.L., S.L. and E.L. were at their home in Shuva when they woke to the sounds of sirens and saw the smoke in the air. They immediately rushed to the bomb shelter and spent the majority of the day there.

471.   Hamas terrorists came to gates of their community but were unsuccessful in entering.

472.   The night of October 7, 2023 the Plaintiffs barely slept. Fear and uncertainty kept them awake most of the night. On October 8, 2023 they made preparations to get out of the area, even though they were told to stay in their homes.

473.    In the aftermath of the attack, Plaintiffs learned that several of their friends were killed in the attack. Nearby farms were destroyed by RPGs. They witnessed images of the horror that took place on October 7, 2023 and the family is devastated by the loss.

474.    The family left their home in Shuva in search of safety and moved to various places over the next couple of months.

475.    They were living in hotels where dysentery was rampant because the facilities could not keep up with all the families seeking refuge.

476.    Their family pooled money to assist them after the attack, and they were able to move back to their home in February 2024, after several months of being displaced and living in unsafe conditions.

477.    Plaintiff Chaim Lichy suffered severe mental and emotional injuries due to stress, fear, and anxiety as a result of the attack on October 7, 2023. He continues to suffer from post-traumatic stress disorder, depression and survivors' guilt over the loss of many friends. He continues to suffer from nightmares. Plaintiff Chaim Lichy has attended therapy to deal with the mental and emotional injuries he suffered and participates in group breath work sessions. Plaintiff Chaim Lichy lost his job as a result of the attack and continues to be unemployed, causing more uncertainty for his family.

478.    As a direct and foreseeable result of the October 7, 2023 attack, Chaim Lichy suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, medical expenses, lost income, and loss of earning capacity.

479.    Plaintiff Michala Hershkovich suffered severe mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack. She also continues to suffer from post-traumatic stress disorder, anxiety and depression. She has been to therapy and is treating with

49

mental health professionals to deal with her symptoms and to help manage the emotions of her children.

480.   As a direct and foreseeable result of the October 7, 2023 attack, Plaintiff Michala Hershkovich suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, medical expenses, lost income, and loss of earning capacity.

481.   Plaintiff R.A.L., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack. He has been in therapy with mental health professions for his depression and anxiety.

482.   As a direct and foreseeable result of the October 7, 2023, attack, R.A.L., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

483.   Plaintiff R.M.L., a minor child., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack. She has been in therapy with mental health professions for her depression and anxiety.

484.   As a direct and foreseeable result of the October 7, 2023, attack, R.M.L., a minor child, suffered general noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

485.   Plaintiff C.L., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack. She suffers from post-traumatic stress, anxiety and depression and has been in therapy with mental health professionals for her symptoms.

486.   As a direct and foreseeable result of the October 7, 2023 attack, C.L., a minor child, suffered general noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

487.    Plaintiff S.L., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack.

488.    As a direct and foreseeable result of the October 7, 2023 attack, S.L., a minor child, suffered general noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

489.    Plaintiff E.L., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack.

490.    As a direct and foreseeable result of the October 7, 2023 attack, E.L., a minor child, suffered general noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

**n.    The Kounitz Family**

491.    Plaintiff Jonathan Kounitz is, and was at the time of the attack, a citizen of the United States.

492.    On October 7, 2023, he was living in Kibbutz Or Haner in Israel and present when the Hamas-led massacre began.

493.    Plaintiff Jonathan Kounitz was 60 years old at the time of the attack.

494.    Plaintiff Rina Kounitz, spouse of Plaintiff Jonathan Kounitz, is a citizen of Israel.

495.    On October 7, 2023, Plaintiff Rina Kounitz she was also living in Kibbutz Or Haner in Israel and present when the Hamas-led massacre began.

496.    Plaintiff Rina Kounitz was 58 years old at the time of the attack.

497.    Plaintiff Y.K., a minor child, is, and was at the time of the attack, a citizen of the United States and the child of Plaintiffs Jonathan Kounitz and Rina Kounitz.

498.    On October 7, 2023, Plaintiff Y.K., a minor child, was also living in Kibbutz Or Haner in Israel and present when the Hamas-led massacre began.

499.   Plaintiff Y.K., a minor child, was 12 years old at the time of the attack.

500.   In the early morning of October 7, 2023, at approximately 6:30 a.m., Plaintiffs Jonathan Kounitz, Rina Kounitz and Y.K., were at their home in Kibbutz Or Haner when they woke to the sounds of the sirens and heard the explosion of rockets around them.

501.   Learning of the attack and that there were terrorists in the area, Plaintiff immediately rushed to their family safe room.

502.   Plaintiffs Jonathan Kounitz, Rina Kounitz and Y.K., a minor child, spent the entire day in the safe room, afraid, fearing for their safety and for their lives.

503.   Terrorists came to the kibbutz, but did not able to enter, as they were stopped by the residents that were guarding it.

504.   The Plaintiffs did not leave the safe room until the following day, but watched the attack unfold on television, seeing the despair and destruction around them.

505.   The Plaintiffs knew several of the hostage and those that were killed in the attack, including two of minor Y.K.'s teachers.

506.   Plaintiff Tina Kounitz knew several hostages that were taken.

507.   Plaintiffs Jonathan Kounitz, Rina Kounitz and Y.K. had to leave their home at Kibbutz Or Haner because it was taken over by soldiers after the attack.

508.   Plaintiff Jonathan Kounitz suffered severe mental and emotional injuries due to stress, fear, and anxiety she suffered on October 7, 2023. He has received counseling and therapy to deal with the psychological trauma he suffered that day.

509.   As a direct and foreseeable result of the October 7, 2023, attack, Jonathan Kounitz suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, medical expenses, lost income, and loss of earning capacity.

510.    Plaintiff Rina Kounitz suffered severe mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack. She suffered emotionally at the loss of friends that were killed in the attack and that are still being held in Gaza.

511.    As a direct and foreseeable result of the October 7, 2023 attack, Plaintiff Rina Kounitz suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, medical expenses, lost income, and loss of earning capacity.

512.    Plaintiff Y.K., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack. He received therapy with psychologist to process the trauma he experienced.

513.    As a direct and foreseeable result of the October 7, 2023, attack, Y.K., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

**o.    The Berger Family**

514.    Plaintiff Omer Berger is, and was at the time of the attack, a citizen of the United States.

515.    On October 7, 2023, she was living in Kibbutz Or Haner in Israel and present when the Hamas-led massacre began.

516.    Plaintiff Omer Berger was 26 years old at the time of the attack.

517.    Plaintiff Noam Berger, spouse of Plaintiff Omer Berger, is, and was at the time of the attack, a citizen of Israel.

518.    On October 7, 2023, Plaintiff Noam Berger was also living in Kibbutz Or Haner and present when the Hamas-led massacre began.

519.    Plaintiff Noam Berger was 27 years old at the time of the attack.

520.    Plaintiff I.B., a minor child, is, and was at the time of the attack, a citizen of Israel and the child of Plaintiffs Omer Berger and Noam Berger.

521.    On October 7, 2023, Plaintiff I.B., a minor child, was also living in Kibbutz Or Haner and present when the Hamas-led massacre began.

522.    Plaintiff I.B., a minor child, was 5 years old at the time of the attack.

523.    Plaintiff E.B., a minor child, is, and was at the time of the attack, a citizen of Israel and the child of Plaintiffs Omer Berger and Noam Berger.

524.    On October 7, 2023, Plaintiff E.B., a minor child, was living in Kibbutz Or Haner and present when the Hamas-led massacre began.

525.    Plaintiff E.B., a minor child, was 3 years old at the time of the attack.

526.    In the early morning of October 7, 2023, at approximately 6:30 a.m., Plaintiffs Omer Berger, Noam Berger, I.B., and E.B. were at their home in Kibbutz Or Haner when they heard the sounds of rockets and bombs and felt a violent shaking around them.

527.    Learning of the attack and that there were terrorists in the area, Plaintiff immediately rushed to a nearby safe room.

528.    Plaintiffs Omer Berger, Noam Berger, I.B., and E.B. spent the entire day in the safe room, afraid and fearing for their lives and for their safety.

529.    A launched rocket struck the Plaintiffs home, damaging their house and injury the family dog.

530.    The Plaintiffs lost friends as a result of the attack; several of their friends were killed on October 7, 2023 by Hamas terrorists.

531.    Plaintiff Omer Berger suffered severe mental and emotional injuries due to stress, fear, and anxiety she suffered on October 7, 2023. She has treated with a therapist to discuss the events of the attack and the mental injuries she suffered.

532.   As a direct and foreseeable result of the October 7, 2023, attack, Omer Berger suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, medical expenses, lost income, and loss of earning capacity.

533.   Plaintiff Noam Berger suffered severe mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack. He has feared for the safety and wellbeing of his family and the stress of dealing with the damage to their home.

534.   As a direct and foreseeable result of the October 7, 2023 attack, Plaintiff Noam Berger suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, medical expenses, lost income, and loss of earning capacity.

535.   Plaintiff I.B., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack. He has been affected both behaviorally and emotionally as a result of the attack and is receiving psychological treatment for his symptoms.

536.   As a direct and foreseeable result of the October 7, 2023, attack, I.B., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

537.   Plaintiff E.B., a minor child, suffered mental and emotional injuries due to stress, fear, and anxiety as a result of the October 7, 2023 attack.

538.   As a direct and foreseeable result of the October 7, 2023, attack, E.B., a minor child, suffered general damages, including severe mental pain and suffering and loss of enjoyment of life, and medical expenses.

## FIRST CLAIM FOR RELIEF

**On Behalf of U.S. Citizens**
**Pursuant to 28 U.S.C. § 1605A(c) for Providing Material Support for**
**Acts of Extrajudicial Killing, Torture, and Hostage Taking**

539.   Plaintiffs repeat and re-allege every allegation of the foregoing paragraphs as if

fully set forth herein.

540.    Iran is, and at all relevant times was, a State Sponsor of Terrorism within the meaning of 28 U.S.C. § 1605A(h)(6).

541.    Iran provided material support, within the meaning of 28 U.S.C. § 1605A(h)(3), to Hamas to enable the FTO to carry out this massive, heinous act of terrorism.

542.    As a direct and proximate result of Iran's willful, wrongful, and intentional acts, Plaintiffs suffered severe physical injuries, extreme mental anguish, pain and suffering, loss of solatium, and economic losses, including medical expenses and lost income.

543.    In addition, Iran's material provision of support was a direct and proximate cause of deaths, including the wrongful death of certain Plaintiffs' immediate family members.

544.    Iran's acts of providing material support for acts of extrajudicial killing, torture, and hostage taking were intended to inflect, and would reasonably result in, severe emotional distress of Plaintiffs.

545.    Iran's conduct was criminal, outrageous, extreme, wanton, willful, malicious, a threat to international peace and security, and a threat to the public warranting an award of punitive damages pursuant to 28 U.S.C. § 1605A(c).

546.    WHEREFORE, each Plaintiff demands that judgment be entered against Iran for compensatory damages, including wrongful death, physical injury, extreme mental anguish, pain and suffering, emotional injuries, economic losses, including medical expenses and lost income, loss of solatium, and loss of services, as well as punitive damages, attorney's fees, and pre-judgment and post-judgment interest.

## SECOND CLAIM FOR RELIEF

**On Behalf of Non-U.S. Nationals Identified Herein,
Who Suffered Personal Injury as a Result of Iran's Material Support for Acts of
Extrajudicial Killing, Torture, and Hostage Taking Pursuant to District of Columbia Law
or Israeli Law, Constituting Intentional Infliction of Emotional Distress**

547.    Plaintiffs repeat and re-allege every allegation of the foregoing paragraphs as if fully set forth herein.

548.    Iran's provision of material support for extrajudicial killing, torture, and hostage taking were intended to inflict severe emotional distress on Plaintiffs.

549.    Courts in this District have found that Washington D.C. tort law applies and allows recovery for plaintiffs who were not U.S. citizens at the time of the attack and cannot recover under the FSIA.

550.    The tort of intentional infliction of emotional distress requires extreme and outrageous conduct that intentionally or recklessly cause severe emotional distress.

551.    Acts of terrorism are by definition extreme and outrageous and intended to cause the highest degree of emotional distress.

552.    Plaintiffs, including those who are not U.S. citizens, did suffer severe emotional distress and are therefore entitled to recover compensatory and punitive damages under D.C. law.

553.    Alternatively, they are entitled to recover under Israeli law, including Articles 35-36 of the Civil Wrongs Ordinance, which provides causes of action for both negligent conduct and intentional harms.

554.    Plaintiffs bring these claims against Iran under three theories of liability allowed under Israeli law, including primary, secondary, and vicarious liability.

555.    Iran's knowingly, willfully, and recklessly caused and assisted the above-described attacks, which are acts of terrorism that a reasonably prudent person would not have committed or abetted.

556.    As a direct and proximate result of the willful, knowing, and reckless acts of Iran, Plaintiffs suffered extreme mental anguish, pain and suffering, loss of solatium, and economic harm.

557.    Israeli law provides for damages for economic loss, pain and suffering, mental anguish, bereavement damages (i.e., solatium), and punitive damages.

558.    WHEREFORE, each non-U.S. citizen Plaintiff demands that judgment be entered against Iran for compensatory damages, including physical injury, extreme mental anguish, pain and suffering, emotional injuries, economic losses, including medical expenses and lost income, loss of solatium, and loss of services, as well as punitive damages, attorney's fees, and pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand:

A.    Judgment for all Plaintiffs against Defendant for compensatory damages, including, but not limited to, physical injury, extreme mental anguish, pain and suffering, emotional injuries, economic losses, including medical expenses and lost income, and loss of solatium, in amounts to be determined at trial;

B.    Judgment for all Plaintiffs against Defendant for punitive damages;

C.    pre-judgment and post-judgment interest;

D.    Plaintiffs' costs and expenses;

E.    Plaintiffs' attorney's fees; and

F.    Such other and further relief as the Court finds just and equitable.

Dated: July 7, 2025                          Respectfully Submitted,

*/s/ Jeremy A. Tor*
Jeremy A. Tor
DC Bar No. OH0065
Ohio Bar No. 0091151
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Ave., East, Suite 1700
Telephone: (216) 696-3232
Facsimile: (216) 696-3924
*Counsel for Plaintiffs*